UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIAM EARL SHERMAN,

                    Petitioner,                    Case No. 1:19-cv-840

v.                                                 Honorable Robert J. Jonker

JOHN DAVIDS,

                    Respondent.
_____/

**<u>OPINION</u>**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.
Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary
review of the petition to determine whether "it plainly appears from the face of the petition and
any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4,
Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily
dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the
duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes
those petitions which raise legally frivolous claims, as well as those containing factual allegations
that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After
undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed
because it fails to raise a meritorious federal claim.

<u>**Discussion**</u>

## I.     Factual allegations

Petitioner William Earl Sherman is incarcerated with the Michigan Department of Corrections at the Ionia Correctional Facility (ICF) in Ionia County, Michigan.  Following a four-day jury trial in the Macomb County Circuit Court, Petitioner was convicted of second-degree murder in violation of Mich. Comp. Laws § 750.317.  On November 15, 2016, the court sentenced Petitioner as a third habitual offender, Mich. Comp. Laws § 769.11, to a prison term of 27 to 40 years.

The facts underlying Petitioner's conviction were summarized by the Michigan Court of Appeals as follows:

> This case arises out of the early-morning stabbing death of Andrew Logsdon at his home.  The victim lived in the home with defendant and three other people: Victor Marcus, Elizabeth Tankiewicz, and Anthony Rappazini.  On the night leading up to the event, the victim, Tankiewicz, Marcus, and Rappazini were using heroin.  Tankiewicz, Marcus, and the victim retired for bed, but were later awoken by defendant and Rappazini, who claimed that the victim had stolen their money.

> An argument ensued between the five roommates after the victim discovered that defendant had ransacked the victim's room and the victim's money and other belongings were missing.  The argument peaked when Marcus discovered that defendant had in his possession the exact amount of money that was reportedly missing.  Marcus punched defendant in the head, gave defendant a garbage bag, and instructed him to start packing and leave the home.  At some point immediately before or after the punch, the victim grabbed the money.  According to Tankiewicz, defendant then went upstairs and the victim followed him, neither having anything in their hands.  Approximately 30 seconds or a minute later, the victim yelled, "[Marcus], get up here.  [Defendant] just stabbed me."

> According to Tankiewicz, Marcus ran upstairs and told her to call 911.  Marcus testified that, when he reached the upstairs, he saw the victim "slouched in the corner . . . and [defendant] pull the blade out of his chest and stick it in again and then pull it out quick.  "Marcus stated that, at that point, he punched defendant, who was standing over the victim while still holding the knife.  Marcus further stated that defendant fell after the punch, but remained holding the knife.  Marcus explained that he got on top of defendant's back and head, and continued punching him, while continually telling defendant to drop the knife.  Rappazini also came upstairs and helped disarm defendant by kicking the knife away after defendant

dropped it. The knife belonged to the victim, who kept the knife on the dresser in his bedroom. Tankiewicz called the police, and while she was still on the phone, went upstairs and saw the victim bloodied and unconscious, at which time she covered the victim's wounds per the 911 operator's direction. The victim was stabbed a total of 10 times, which included four stab wounds on the victim's back. The victim eventually died from his injuries.

After defendant was disarmed, he told Marcus, "Don't call the police, please." Tankiewicz and Marcus told defendant to leave, and defendant obliged. As Officer Steven Reed was responding to the call, he observed defendant walking away from the home and arrested him without incident. When defendant was arrested, he acknowledged stabbing the victim, although he alleged that he did so in self-defense. Defendant had injuries following the incident—blood in his mouth, facial injuries, and head and neck pain—and was transported to the hospital to be treated for those injuries. When answering the paramedic's question as to what happened to him, defendant responded that someone stole his money, but "that person would never do that again. At the hospital, defendant was interviewed by police. Defendant again asserted that he acted in self-defense but gave inconsistent statements as to whether he was being assaulted by a single person or multiple persons and whether the victim had a knife or was unarmed.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.54.)

The trial court instructed the jurors that they could find Petitioner guilty or not guilty of first-degree murder, the lesser-included offense of second-degree murder, or the lesser-included offense of manslaughter. (*Id.*) The jury found Petitioner guilty of second-degree murder.

Petitioner, with the assistance of counsel, directly appealed his conviction and sentence. He raised three issues, the same issues he raises in his habeas petition. By unpublished opinion issued June 19, 2018, the Michigan Court of Appeals affirmed the trial court. The appellate court remanded the matter to the trial court, however, to correct a clerical error in the judgment that identified Petitioner as a fourth habitual offender when the charge and the sentencing transcript made clear that Petitioner was a third habitual offender. (*Id.*, PageID.57.)

Petitioner, again with the assistance of counsel, filed an application for leave to appeal in the Michigan Supreme Court, raising the same issues he raised in the court of appeals.

(Pet., ECF No. 1, PageID.2.)  The supreme court denied leave by form order entered December 21, 2018.

On October 10, 2019, Petitioner timely filed his habeas corpus petition, raising three grounds for relief, as follows:

I.  Petitioner is entitled to a resentencing when the trial court violated the two-thirds rule of *People [v.] Tanner*, 387 Mich. 683 (1972), erroneously scored [Offense Variables] six and nine, and imposed an unreasonable sentence.

II.  Petitioner was denied his state and federal constitutional due process rights where his conviction for second-degree murder is not supported by evidence sufficient to establish his guilt beyond a reasonable doubt, the prosecutor failed to disprove that the killing was justified by self-defense or that the killing was mitigated to manslaughter due to the heat of passion based upon adequate provocation.

III.  The trial court reversibly erred and violated Petitioner's constitutional due process rights in wrongly admitting evidence of prior criminal conduct under Mich. Comp. Laws § 768.27b.

(Pet., ECF No. 1, PageID.3.)

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here

the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III. Discussion

### A. Petitioner's sentence

Petitioner contends that his sentence is invalid for three reasons: first, it violates the rule announced in *People v. Tanner*, 199 N.W.2d 202 (Mich. 1972)—that the minimum sentence in an indeterminate sentence cannot exceed two-thirds of the maximum sentence; second, the trial court improperly scored two of the offense variables; and third, a 27-year minimum sentence was unreasonable. Violation of the *Tanner* rule, the reasonableness of the minimum sentence, and the mis-scoring of Offense Variable 9, as described by Petitioner, are not cognizable on habeas review. Although Petitioner frames the alleged mis-scoring of Offense Variable 6 in a way that is cognizable on habeas review, any error was harmless and, therefore, does not warrant habeas relief.

### 1. The *Tanner* rule

Petitioner argues that his sentence for second-degree murder (27 to 40 years) violates the "two-thirds rule" of *Tanner*. In Michigan, unless the only punishment prescribed by

law for an offense is life imprisonment, the court imposing sentence must fix a minimum term of imprisonment and a maximum term—an indeterminate sentence; however, the maximum penalty provided by statute is the maximum term. Mich. Comp. Laws §§ 769.8, 769.9.[1] For some offenses, the maximum penalty is fixed. *See, e.g.*, Mich. Comp. Laws § 750.218(4) (obtaining money of a value of $1000.00 or more, but less than $20,000.00 by use of a false pretense—5 years). For other offenses, such as first-degree criminal sexual conduct, the maximum penalty is life or any term of years. Mich. Comp. Laws § 750.520b(2). For those offenses, the trial court has discretion to impose a maximum penalty. Mich. Comp. Laws § 769.9(2).

Although the trial court sets the minimum sentence and the maximum sentence, the court has no control over the length of the sentence a defendant serves within that range. The Michigan sentencing statutes vest the Governor and the parole board with discretion to make that determination. *Tanner*, 199 N.W.2d at 203. The *Tanner* court concluded that too short an interval between the minimum and maximum sentence might impermissibly deprive those other actors from exercising their discretion with respect to sentence duration. *Id.* at 204-05. The *Tanner* court, therefore, held "that any sentence which provides for a minimum exceeding two-thirds of the maximum is improper as failing to comply with the indeterminate sentence act." *Id.*

Petitioner claims his sentence violates that rule. He is correct that 27 years exceeds two-thirds of 40 years–by 4 months. The *Tanner* rule, however, does not apply if the maximum sentence is life imprisonment or "life or any term of years." *People v. Powe*, 679 N.W.2d 67 (2004); *People v. Drohan*, 715 N.W.2d 778 (2006); *People v. Harper*, 739 N.W.2d 523 (2007);

---

[1] A life sentence is not the only exception to the indeterminate sentence requirement. For example, there are determinate sentences for some offenses. See Mich. Comp. Laws § 750.227b (two-year consecutive sentence for possession of a firearm during the commission of a felony). There are also intermediate sanctions. Section 769.34 of the Michigan Compiled Laws identifies certain circumstances where the court has freedom to impose a penalty different from that which would be imposed under the sentencing guidelines.

*People v. Washington*, 795 N.W.2d 816 (2011); *People v. Floyd*, 804 N.W.2d 564 (2011). And, because second degree murder is punishable by a sentence of life or any term of years,[2] that is what the court of appeals held in Petitioner's case. (Mich. Ct. App. Op., ECF No. 1-1, PageID.56.) Thus, the *Tanner* rule does not apply to Petitioner's sentence.

Petitioner argued in the appellate court and he argues here that the state court erred in applying its own law. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76; *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76); *see also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same). Therefore, the appellate court's determination that *Tanner* does not apply is binding on this Court and conclusively demonstrates that Petitioner's *Tanner* claim is meritless.

---

[2] *See* Mich. Comp. Laws § 750.317 ("Second degree murder . . . shall be punishable by imprisonment in the state prison for life, or any term of years, in the discretion of the court trying the same.").

Because Petitioner's claim that his sentence violated *Tanner* is meritless, his claim that counsel rendered ineffective assistance because he failed to object to the sentences on that basis was meritless as well. The Sixth Circuit has held that "'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

### 2.    The reasonableness of Petitioner's sentence

Petitioner's claim that his minimum sentence was unreasonable under *People v. Lockridge*, 870 N.W.2d 502 (2015), depends in part on his claim that it violates *Tanner*. To the extent Petitioner's challenge goes beyond the violation of *Tanner*, however, it is also not cognizable on habeas review.

In *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990), the Michigan Supreme Court held that a sentence must be proportional, a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). In *Lockridge*, the Michigan Supreme Court altered the legislative scheme to comply with constitutional requirements, making it advisory rather than mandatory. The court did not leave the exercise of judicial discretion in sentencing without any boundary: where the sentencing court strays outside the applicable sentencing guidelines range, the court held that the resulting sentence must be reasonable. *Lockridge*, 870 N.W.2d at 521. Two years later, the Michigan Supreme Court indicated that "reasonableness" as contemplated by *Lockridge* is

determined by inquiring whether the sentence was proportional under *Milbourn*. *People v. Steanhouse*, 902 N.W.2d 327, 329 (Mich. 2017).

It is plain that *Milbourn* was decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at * 2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law. *See Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41. Thus, Petitioner's claim based on proportionality under *Milbourn* or reasonableness under *Lockridge* is not cognizable in a habeas corpus action.

Moreover, the claim necessarily fails as a matter of state law. As the Michigan Court of Appeals noted in Petitioner's case, "defendant's sentence was within the recommended guidelines range . . . [s]entences within the appropriate guidelines range are presumed proportionate . . . and must be affirmed on appeal . . . ." (Mich. Ct. App. Op., ECF No. 1-1, PageID.57) (citation omitted). That determination is binding on this Court.

In addition, to the extent that Petitioner asserts that his sentence was disproportionate under the Eighth Amendment, his claim is without merit. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'")

(quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Further, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.

Petitioner's argument that his sentence is unreasonable or disproportionate under state law is not cognizable on habeas review, and Petitioner's sentence does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment. Accordingly, Petitioner is not entitled to habeas relief on the claim that his sentence is unreasonable.

### 3. Scoring errors

Petitioner identifies two offense variables that he contends the sentencing court scored improperly. Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Nonetheless, a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005); *see also United States v.*

*Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on

such a claim, the petitioner must show (1) that the information before the sentencing court was

materially false, and (2) that the court relied on the false information in imposing the sentence.

*Tucker,* 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123

F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A

sentencing court demonstrates actual reliance on misinformation when the court gives "explicit

attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to

the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447. Petitioner claims that

one of the scoring errors falls into this category.

      The Michigan Court of Appeals disagreed with Petitioner's claim that the

sentencing court relied on inaccurate information when it scored the guidelines. (Mich. Ct. App.

Op., ECF No. 1-1, PageID.57.) The court also noted, however, that it did not prejudice Petitioner

in any way—any error was harmless. (*Id*.) The court explained that if Petitioner prevailed with

regard to both of his scoring error claims, it would lower his Offense Variable score by 25 points,

but it would leave him in the same guidelines grid with the same minimum sentencing range. (*Id*.)

      "State courts' harmless-error determinations are adjudications on the merits, and

therefore federal courts may grant habeas relief only where those determinations are objectively

unreasonable." *O'Neal v. Balcarcel*, 933 F.3d 618, 624 (6th Cir. 2019) (citing *Davis v. Ayala*, 135

S. Ct. 2187, 2198-99 (2015)). Moreover, the appellate court's determination that no prejudice

could result where the scored guidelines fall into the minimum sentence range of 270 to 675

months whether the Offense Variable score is 105 points or 130 points is logically unassailable.

Therefore, the appellate court's determination is reasonable and forecloses habeas relief.

**B.** **Sufficiency of the prosecution's evidence regarding self-defense and provocation**

Petitioner next complains that his conviction for second-degree murder is not supported by sufficient evidence because the prosecutor did not disprove beyond a reasonable doubt, that the killing was not justified by self-defense or mitigated to manslaughter by the heat of passion brought on by adequate provocation. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. at 319, which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners

who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting

*United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the following standard in resolving

Petitioner's sufficiency challenges:

> Challenges to the sufficiency of the evidence are reviewed de novo. *People v Solloway*, 316 Mich. App. 174, 180; 891 N.W.2d 255 (2016). In reviewing the sufficiency of the evidence on appeal, this court views the evidence in the light most favorable to the prosecution and must determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich. 127, 139; 815 N.W.2d 85 (2012). "[C]ircumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *Solloway*, 316 Mich. App. at 180-181.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.55.) The standard applied is identical to the *Jackson*

standard. Although the court of appeals relied on state court authority, that state court authority

ultimately derives the standard from *Jackson*. *See, e.g., Solloway*, 891 N.W.2d at 262, (citing

*People v. Wolfe*, 489 N.W.2d 748, 751 (Mich. 1992) (citing *Jackson*)).

The elements of second-degree murder are: "(1) a death, (2) caused by an act of the

defendant, (3) with malice, and (4) without justification or excuse." *People v. Goecke*, 579 N.W.2d

868, 878 (Mich. 1998). Malice "is defined as the intent to kill, the intent to cause great bodily

harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural

tendency of such behavior is to cause death or great bodily harm." *Id.*

Manslaughter is "murder without malice." *People v. Mendoza*, 664 N.W.2d 685,

689 (Mich. 2003). Manslaughter might be "voluntary," which is "'[t]he act of killing, though

intentional, . . . committed under the influence of passion or in heat of blood, produced by an

adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool

and reason to resume its habitual control . . . .'" *Id.* at 690 (quoting *Maher v. People*, 10 Mich. 212,

1862 WL 1095 (Mich. May 21, 1862)).[3]   Petitioner argues he acted in the heat of passion after adequate provocation.

Provocation "is not an element of voluntary manslaughter . . . [r]ather, provocation is the circumstance that negates the presence of malice." *Id*.  To properly negate the presence of malice that might make a killing murder, it must be shown that the killing occurred "in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Id*.  "'The determination of what is reasonable provocation is a question of fact for the fact-finder.'"  (Mich. Ct. App. Op., ECF No. 1-1, PageID.56.)

Alternatively, Petitioner claims his killing of the victim was justified because he acted in self-defense.  Under Michigan law, self-defense is an affirmative defense.  *See People v. Dupree*, 788 N.W.2d 399, 405 (Mich. 2010).  "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission.  It does not negate specific elements of the crime.'"  *People v. Reese*, 815 N.W.2d 85,101 n.76 (Mich. 2012) (quoting *Dupree*, 788 N.W.2d at 405 n.11).

Although a prosecutor is required to disprove a claim of self-defense under state law, *People v. Watts*, 232 N.W.2d 396, 398 (Mich. Ct. App. 1975), "[p]roof of the nonexistence of . . . affirmative defenses has never been constitutionally required," *Smith v. United States*, 568 U.S. 106, 110 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)).  Thus, the Constitution did not require the prosecution in Petitioner's case to disprove self-defense beyond a reasonable doubt.  *See Gilmore v. Taylor*, 508 U.S. 333, 359 (1993) (Blackmun, J., dissenting)

---

[3] Involuntary manslaughter is "the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty."  *People v. Townes*, 218 N.W.2d 136, 141 (Mich. 1974).  There is no suggestion that Petitioner's killing of the victim was involuntary manslaughter.

("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt."); *Martin v. Ohio*, 480 U.S. 228, 233-36 (1987) (rejecting claim that putting burden on defendant to prove self-defense is unconstitutional); *see also Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir. 1988) (explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F.2d 50 (6th Cir. 1986)).

Put another way, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999). In raising this challenge, Petitioner "has only faulted the jury's refusal to credit his proffered affirmative excuse or justification" for his conduct. *Id.* Thus, any claim that the prosecutor failed to disprove his affirmative defense is merely a state-law claim that is not cognizable on habeas review. *Id.*; *Redman*, 858 F.2d at 1200.

Provocation is not an affirmative defense. Because it negates an element of second-degree murder, the government has a ***constitutional*** duty to overcome the claim of provocation beyond a reasonable doubt. *Smith v. United States*, 568 U.S. 106, 110 (2013). But, that does not mean that Petitioner is entitled to relief. With regard to proving malice, the Michigan Supreme Court has stated:

> The facts and circumstances of the killing may give rise to an inference of malice. *Id*. A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm. *Id*. Malice may also be inferred from the use of a deadly weapon. *Id*., p. 567, 540 N.W.2d 728.

*People v. Carines*, 597 N.W.2d 130, 136 (Mich. 1999). Malice and provocation are simply opposite sides of the same coin. Evidence that supports a finding of malice undercuts a determination that a killer was adequately provoked and evidence that supports a finding of adequate provocation undercuts a determination that a killer acted with malice.

The court of appeals acknowledged that there was evidence offered to support a finding of adequate provocation and there was evidence offered to support a finding of malice:

> Defendant argues that he was adequately provoked because he was repeatedly assaulted by multiple individuals. While it is true that he asserted this fact during his police interview, considering the jury's verdict, the jury chose not to find this assertion credible. The jury was properly instructed that it was responsible for determining whether defendant was provoked and whether a sufficient cooling off period had elapsed. The jury found defendant guilty of second-degree murder, despite having the option to find that defendant was provoked in the heat of passion. Accepting the jury's credibility determinations as final and viewing the evidence in the light most favorable to the prosecution, the record indicates that defendant was only punched one time by Marcus before his stabbing of the victim. There is no evidence that the victim physically harmed defendant before the stabbing, and, based on this record, a single punch is clearly not enough for a reasonable person to lose control and stab a third person who has not physically threatened him. Therefore, sufficient evidence existed to show that defendant acted out of malice rather than the heat of passion.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.56.)

Petitioner does not claim the court's assessment of the evidence supporting a finding of malice is inaccurate. Petitioner complains instead that the jury did not credit the evidence that supports provocation. The jury's rejection of mitigating evidence is simply the flipside of the decision to credit the evidence that supports a finding of malice. In so arguing, Petitioner is asking the Court to make its own assessments regarding credibility, to view the evidence in a light that favors Petitioner, and to draw inferences from that evidence that are contrary to the inferences the jury clearly drew when it found Petitioner guilty of second-degree murder. Petitioner's argument turns the *Jackson* standard on its head.

*Jackson* makes clear that it is the jury's province to draw reasonable inferences from the evidence, but it does not define "reasonable inference." In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The Court described a reasonable inference as an inference that a rational jury could make from the facts. Certainly, the inference that Petitioner killed the victim with malice could rationally flow from the facts that Petitioner violently stabbed the victim multiple times with a knife, including four times in the victim's back. The inference is not compelled by those facts. The inference may not even be more likely than not. It is simply rational. *Id*. at 656. To succeed in his challenge, Petitioner must show that the identified inference is irrational. Or, in the parlance of federal habeas review, he must show that the state court's determination that the inference is reasonable is contrary to, or an unreasonable application of, *Coleman*.

Petitioner has not made that showing. His showing that other inferences might follow from the evidence—inferences that favor him—is immaterial. He has not identified any United States Supreme Court case that resolves the issue differently on a set of materially indistinguishable facts. Accordingly, Petitioner is not entitled to habeas relief on the sufficiency challenge related to the claim that he was adequately provoked to stab the victim.

### C.  Prior acts of domestic violence

Prior to Petitioner's trial, the prosecutor filed a notice of intent to present evidence, under Mich. Comp. Laws § 768.27b, of a prior incident of domestic violence that Petitioner committed against his father. (Pet'r's Appeal Br., ECF No. 1-1, PageID.26-27, 46-50.) The court permitted Petitioner's father and a responding police officer to testify regarding a January 23, 2013, incident where Petitioner stabbed his father. Petitioner claims that the court's admission of that testimony violated state law and his due process rights.

The Michigan Court of Appeals concluded that the evidence was admissible under

Mich. Comp. Laws § 768.27b and the Michigan Rules of Evidence:

> MCL 768.27b(1)provides that, in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under MRE 403. MCL 768.27b(5)(a) defines "offense involving domestic violence" to include"[c]ausing or attempting to cause physical or mental harm to a family or household member. MCL768.27b(5)(b) defines "[f]amily or household member" to include"[a]n individual with whom the person resides or has resided." This Court has specifically held that, unlike other acts evidence introduced under MRE 404(b), MCL 768.27b "permits evidence of prior domestic violence in order to show a defendant's character or propensity to commit the same act." *People v Railer*, 288 Mich. App. 213, 219-220; 792 N.W.2d 776 (2010).
>
> Here, defendant stabbed his father, with whom he lived at the time. Such an act constitutes domestic violence against a family or household member and evidence of the act was therefore admissible under MCL768.27b for any purpose for which it was relevant. Nonetheless, even though the evidence was admissible under MCL 768.27b, it was still subject to MRE 403. MRE 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," among other considerations. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich. 376, 398; 582 N.W.2d 785 (1998).
>
> Here, the two acts were very similar. In both acts, defendant used a knife against a household member when he felt like his housing may be taken away from him. Only three years had elapsed between the two events, showing a close temporal proximity. Moreover, the reliability of the other-acts evidence was substantial given defendant's guilty plea. In the previous case, defendant stabbed his father despite defendant's father never physically touching him. Here, given that the initiation of the physical conflict between defendant and the victim occurred outside the view of the witnesses, the prior act was highly relevant to assessing defendant's claims that the victim attacked him and that defendant acted out of self-defense. Finally, the other-acts evidence was not very graphic as compared to the charged crime and was fairly brief. The risk that the jury would give the evidence preemptive weight was minimal. Therefore, the trial court did not err in concluding that evidence of the prior stabbing was not unfairly prejudicial under MRE 403.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.55.) The court of appeals did not expressly address

the due process argument.

To the extent Petitioner contends that the state courts did not follow Mich. Comp. Laws § 768.27b or properly apply the Michigan Rules of Evidence, he does not state a cognizable claim. As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68.

State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, the Court may not grant relief if it would have decided the evidentiary question differently. The Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner cannot prevail on his habeas claim that the admission of evidence of another bad act violates due process because there is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. 502 U.S. at 75. The court

stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997)—a case upon which Petitioner relies—and *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at, 512. Accordingly, Petitioner is not entitled to habeas relief on his claim with regard to the admission of evidence relating to the stabbing of his father.

The testimony of the responding police officer went beyond the domestic violence act—the stabbing of Petitioner's father—which permitted its admission under Mich. Comp. Laws § 768.27b. The officer also testified with regard to Petitioner resisting arrest and the police use of a taser to subdue Petitioner. With regard to that aspect of the testimony admitted, the court of appeals resolved the issue differently:

> The trial court did, however, err by admitting evidence that defendant resisted arrest during the prior stabbing incident. The police officers in the earlier case were not members of defendant's family or household. Thus, any violence defendant enacted in resisting arrest was not domestic violence and was therefore inadmissible under MCL 768.27b. Nonetheless, we find that this error was harmless. In the prior case, defendant resisted arrest and pleaded guilty to the stabbing. In this case, defendant did not resist arrest, but rather complied with his arrest and immediately asserted self-defense. Thus, defendant's prior resisting-arrest conviction cuts against his guilt of the instant second-degree murder charge. Moreover, the testimony regarding the earlier resisting arrest was brief and not graphic or otherwise sensational. Thus, although the trial court erred by admitting the evidence of defendant's resisting-arrest conviction, because the error did not prejudice defendant's defense, he is not entitled to reversal of his conviction.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.55.)

The fact that the evidence regarding Petitioner's resistance was not admissible under the state statute does not change the federal constitutional habeas analysis. Petitioner's resistance remains an "other bad act," and the admission of evidence regarding that act is simply not contrary to, or an unreasonable application of, clearly established federal law. Moreover, as noted above, the appellate court's determination that any error was harmless precludes habeas relief unless that determination is objectively unreasonable. Petitioner does not even make that argument and, on its face, the court of appeals determination of harmlessness is not unreasonable. Accordingly, the admission of evidence regarding Petitioner's resistance does not warrant habeas relief.

## IV.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court

may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:    January 13, 2020            /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      CHIEF UNITED STATES DISTRICT JUDGE